781 P.2d 71

ARIZONA TAX RESEARCH ASSOCIA-
TION, an Arizona non-profit corpora-
tion; Arizona Public Service Company;
and Salt River Project Agricultural Im-
provement and Power District, Plain-
tiffs/Appellants/Cross–Appellees,

v.

MARICOPA COUNTY,
Defendant/Appellee/Cross–Appellant,

ARIZONA TAX RESEARCH ASSOCIA-
TION, an Arizona non-profit
corporation, Plaintiff/Appellant,

v.

ARIZONA DEPARTMENT OF REVE-
NUE, Defendant/Appellee.

Nos. 2 CA–CV 88–0384, 2
CA–CV 88–0390.

Court of Appeals of Arizona,
Division 2, Department A.

Feb. 16, 1989.

Review Granted July 17, 1989.

Fennemore Craig by Paul J. Mooney and
Ren R. Hayhurst, Phoenix, for plain-
tiffs/appellants/cross-appellees    Arizona
Tax Research Ass'n.

Snell & Wilmer by Vaughn A. Crawford,
Eileen J. Moore and Stephen C. Newmark,
Phoenix, for plaintiff/appellant/cross-ap-
pellee Arizona Public Service Co.

Jennings, Strouss & Salmon by Ann M.
Dumenil, Phoenix, for plaintiff/appel-
lant/cross-appellee Salt River Project.

Lewis and Roca by John P. Frank, Pat-
rick Derdenger and Gale L. Garriott, Phoe-
nix, for defendant/appellee/cross-appellant
Maricopa County.

Robert K. Corbin, Atty. Gen. by Toni
McClory and Michael G. Prost, Phoenix, for
defendant/appellee Arizona Dept. of Reve-
nue.

Mohr, Hackett, Pederson, Blakley, Randolph & Haga by David L. Haga and Robert E. Jacobson, Phoenix, amicus curiae.

Lewis and Roca by John P. Frank, Patrick Derdenger and Gale L. Garriott, Phoenix, amicus curiae.

## OPINION

LIVERMORE, Presiding Judge.

This case arose from a dispute over how the property tax levy limitation is to be calculated under § 42–301(A) when utility property previously under construction is completed and placed into service.

In late 1987 a number of property owners filed suit challenging the legality of Maricopa County's calculation of the 1987 primary property tax rate and levy limitation and requesting refunds, declaratory relief, and attorneys' fees. The trial court granted the plaintiffs' motion for summary judgment on the claim that Maricopa County's calculation violated A.R.S. § 42–301(A)(3), but denied their request for declaratory relief or attorneys' fees. Rather than providing for refunds, the court ordered that monies paid in excess of the proper amount be used to reduce Maricopa County's primary tax levy for the year following the exhaustion of all related appeals.

Appellants Arizona Tax Research Associates, Arizona Public Service Company, and Salt River Project Agricultural Improvement & Power District argue on appeal that they are statutorily entitled to a refund of overpaid taxes and that the trial court erred in denying declaratory relief and attorneys' fees against Maricopa County. Maricopa County cross-appeals, urging reversal on the merits. Because we find it necessary to reverse on the merits, we do not reach appellants' arguments concerning the judgment.

■ Arizona counties are statutorily authorized to levy, assess, and collect ad valorem property taxes, A.R.S. § 11–251, but are limited in the amount they may levy without voter approval. Ariz. Const. Art. IX, § 19; A.R.S. § 42–301. This dispute centers upon the levy limitation calculated

by Maricopa County for tax year 1987, the year Units I and II of the Palo Verde Nuclear Generating Station came on line.

For property tax purposes, utility property is valued differently according to its stage of construction. A utility which is still under construction is valued as "construction work in progress" ("CWIP") at 50% of the construction costs. A.R.S. § 42–144(C)(1) and (E). A completed utility is valued as "original plant in service" ("OPIS") at 100% of construction costs. A.R.S. § 42–144(C)(5). The value of the utility is determined on January 1 of each year. A.R.S. § 42–144(A). Because both Units I and II were completed after January 1, 1986, but before January 1, 1987, they were valued and assessed property taxes as "CWIP" at 50% cost for tax year 1986 and as "OPIS" at 100% for tax year 1987.

The levy limit calculation is governed by Ariz. Const. art. IX, § 19 and A.R.S. § 42–301(A)(3). Article IX, § 19 provides:

(1) The maximum amount of ad valorem taxes levied by any county, city, town or community college district shall not exceed an amount two per cent greater than the amount levied in the preceding year.

\* \* \* \* \* \*

(4) The limitation prescribed by subsection (1) shall be increased each year to the maximum permissible limit, whether or not the political subdivision actually levies ad valorem taxes to such amounts.

\* \* \* \* \* \*

(6) The limitation prescribed by subsection (1) of this section shall be increased by the amount of ad valorem taxes levied against property not subject to taxation in the prior year and shall be decreased by the amount of ad valorem taxes levied against property subject to taxation in the prior year and not subject to taxation in the current year. Such amounts of ad valorem taxes shall be computed using the rate applied to property not subject to this subsection.

Section 42–301(A)(3) (effective until January 1, 1988) provides:

A. [T]he counties ... shall not levy primary property taxes in any year after 1980 in excess of an aggregate amount computed as follows:

\*　　\*　　\*　　\*　　\*　　\*

3. Determine the assessed value for the current tax year of all property in such entity that was subject to tax in the preceding tax year.

At issue is the effect on the levy limitation of the completion of a utility and the change of its designation from "CWIP" to "OPIS" pursuant to § 42–144. Maricopa County argues that only "CWIP" was "subject to tax" the preceding year and "OPIS" is in effect new property not previously "subject to tax." In calculating the levy limit, therefore, net new construction as contemplated in Ariz. Const. art. IX, § 19 is the difference in value of Units I and II as "OPIS" property and their value as "CWIP" property, i.e. 50% of the total construction cost. In contrast, appellants argue that the entire property was "subject to tax" in 1986, but at a reduced rate. Thus the full cash value of Units I and II, 100% of the construction costs, should be used to calculate the tax rate. Maricopa County's method of calculation results in a levy limitation approximately $4 million higher than appellants'.

A utility plant under construction is useless until it is placed into service and able to produce both electricity and revenue. That the legislature recognized this is evident from the distinction created in A.R.S. § 42–144 between "CWIP" and "OPIS" and by the lesser valuation accorded "CWIP". Once the plant is placed in service its character changes both practically and statutorily. Our reading of article IX, § 19 and the relevant statutes leads us to conclude that when utility property which has been under construction is placed into service there is new property not subject to taxation in the prior year equal to the difference between the "CWIP" value and the "OPIS" value.

The constitutional provision was designed to place a general limitation on the growth of governmental spending to 2% a year. Recognizing, however, the enormous growth of the state, the provision went on to exempt new construction. If we were to accept cross-appellees' argument, the reduced valuation during construction would permanently reduce the county's ability to fund its activities because fifty percent of the construction cost of the Palo Verde plant would never be treated as new construction so as to increase the tax base from which Maricopa County may compute its levy limitation. While it is possible to say that Palo Verde was subject to tax in 1986 but at a reduced rate and that the value in 1987 of that property for purposes of A.R.S. § 42–301(A)(3) was double because the rate reduction had expired, a literal interpretation adopted by the Attorney General, Atty. Gen. Op. No. I87–029 (Feb. 12, 1987), that construction would defeat the constitutional policy of allowing the levy limitation to grow by net new construction. Statutes should not be so construed. *See Perez v. Maricopa County,* 158 Ariz. 40, 760 P.2d 1089 (App.1988). In granting reduced taxes during construction of a utility, it was surely not the legislative intent permanently to reduce county funding. The judgment of the trial court is reversed.

■ In a separate appeal, Arizona Tax Research seeks to collect attorneys' fees from the Department of Revenue pursuant to A.R.S. § 12–348, which provides in part:

A. In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits in any of the following:

\*　　\*　　\*　　\*　　\*　　\*

2. A civil action brought by the party against the state, a city or town to challenge the assessment or collection of taxes.

\*　　\*　　\*　　\*　　\*　　\*

G. This section does not:

\*　　\*　　\*　　\*　　\*　　\*

4. Apply to proceedings involving eminent domain, foreclosure, collection of judgment debts or proceedings in

which the state or a city, town or county is a *nominal party.* [Emphasis added]. The sole role of the Arizona Department of Revenue in the matters leading up to this dispute was to furnish Maricopa County with valuation figures in adherence to Atty. Gen. Op. No. I87–029 (Feb. 12, 1987). Throughout, the Department aligned itself with the plaintiffs. It was named as a defendant pursuant to A.R.S. § 42–204, which requires that the Department be made a party to any action for the recovery of illegally collected taxes, and only after it declined more than one invitation from Arizona Tax Research to participate as a party-plaintiff. The complaint alleged no wrongdoing and the Department made it clear in its answer that it had no legal dispute with the plaintiffs and would remain a nominal party in the litigation. With the exception of the attorneys' fees issue, it at no time advocated a position adverse to that of Arizona Tax Research.

We agree with the trial court that the legislature could not possibly have intended that in an action such as this where the state not only is not contesting the position taken by the taxpayers but is in fact agreeing with it, it should nevertheless be hit with attorneys' fees. In the first place, it surely cannot be said that Arizona Tax Research "prevailed" over the Department within the meaning of § 12–348(A). And we are cited no authority for the argument that because Arizona Tax Research prevailed over Maricopa County, it is entitled to fees against the Department of Revenue.

Second, the Department was clearly a nominal party to the action and thus exempt pursuant to § 12–348(G)(4). Although appellant cites *Cortaro Water Users' Ass'n v. Steiner,* 148 Ariz. 314, 714 P.2d 807 (1986) for the proposition that a state agency which is required to be a party by statute cannot be a nominal party, that case in fact holds quite the opposite. In *Cortaro* our supreme court held that the nominal party exclusion attaches as long as the agency simply certifies the record and answers the complaint, but does not take an active part in the proceedings. *Id.* at

318, 714 P.2d at 811. Incredibly, Arizona Tax Research also argues that to the extent that the Department actively participated in the proceedings as an advocate for the *plaintiffs,* it was not a nominal party and should pay the plaintiff's attorneys' fees. This is absurd.

 The trial court's denial of attorneys' fees against the Department of Revenue is affirmed. Further, because we find this appeal against the Department frivolous and overreaching, we hereby grant the Department's request for attorneys' fees on appeal upon filing the proper affidavits according to Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

AFFIRMED IN PART AND REVERSED IN PART.

HATHAWAY and HOWARD, JJ., concur.