837 P.2d 139

**SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, a political subdivision of the State of Arizona; the Atchison, Topeka and Santa Fe Railway Company, a Delaware corporation; Tucson Electric Power Company, an Arizona corporation; San Carlos Resources, Inc., an Arizona corporation; Valencia Energy Company, an Arizona corporation; Mountain States Telephone and Telegraph Company, a Colorado corporation, doing business as U.S. West Communications; Arizona Public Service Company, an Arizona corporation; Public Service Company of New Mexico, a New Mexico corporation, Plaintiffs–Appellants,**

v.

**APACHE COUNTY, a political subdivision of the State of Arizona; Arizona Department of Revenue, an agency of the State of Arizona, Defendants–Appellees.**

No. CV–92–0181–PR.

Supreme Court of Arizona,
En Banc.

Sept. 3, 1992.

Jennings, Strouss & Salmon by Ann M. Dumenil, Phoenix, for plaintiffs-appellants Salt River Project Agr. Imp. and Power Dist.

Snell & Wilmer by Lawrence F. Winthrop, Courtney P. Odishaw, Phoenix, for plaintiffs-appellants Arizona Public Service Co.

Fennemore Craig, P.C., by Timothy Berg, Paul J. Mooney, Phoenix, for plain-

tiffs-appellants Atchison, Topeka & Santa Fe Ry. Co., Mountain States Tel. and Tel. Co., Tucson Elec. Power Co., San Carlos Resources, Inc. and Valencia Energy Co.

Mohr, Hackett, Pederson, Blakely, Randolph & Haga by David L. Haga, Jr., Robert E. Jacobson, Azim Q. Hameed, Phoenix, for defendants-appellees Apache County and Arizona Dept. of Revenue.

## OPINION

### FELDMAN, Chief Justice.

Petitioner Apache County seeks review of a court of appeals opinion holding that when a utility plant obtains regulatory certification and begins commercial operation, the statutory change in property classification from "construction work in progress" to "original plant in service" does not result in "new property" for the purposes of calculating the County's property tax levy limit. *Salt River Project Agric. Improv. & Power Dist. v. Apache County*, 171 Ariz. 476, 831 P.2d 852 (Ct.App.1992) (hereinafter *Salt River Project*). We granted review to resolve the conflict in the court of appeals between that opinion and *Arizona Tax Research Ass'n v. Maricopa County*, 162 Ariz. 94, 781 P.2d 71 (Ct.App.), *vacated in part*, 163 Ariz. 255, 787 P.2d 1051 (1989), on this issue of statewide importance. *See* Rule 23(c)(4), Ariz.R.Civ.App. Proc., 17B A.R.S. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3).

## FACTS AND PROCEDURAL HISTORY

The construction of Unit I of the Springerville Generating Station in Apache County was substantially complete on January 1, 1985. Because, however, the plant lacked the federal certification required to operate, it was valued at 50% of its construction cost for the 1985 tax year as "construction work in progress" (CWIP) pursuant to A.R.S. § 42–144 (currently

§ 42–144.02). In June 1985 the unit was certified, put into commercial service and began generating electrical power. Consequently, for the 1986 tax year the plant was valued at 100% of its construction cost, less depreciation, as "original plant in service" (OPIS) pursuant to A.R.S. § 42–144.

In calculating its constitutional and statutory primary property tax levy limit [1] for the 1986 tax year, Apache County used a value of $81,085,360 in the denominator of the formula set forth in A.R.S. § 42–301(A). This represented the difference between the 1986 value of the unit as OPIS and the 1985 value of the unit as CWIP.[2] As a result, the County calculated its 1986 levy limit to be $619,445, a figure $128,303 higher than the $491,042 figure that would have resulted had the County used the OPIS value in the denominator. *See* Ariz. Const. art. 9, § 19. Because the levy limit for each succeeding year is based on the prior year's limit, the County's 1986 levy limit has affected its levy limits for each subsequent tax year.

Salt River Project Agricultural Improvement and Power District, along with the other plaintiffs (collectively SRP), challenged the County's calculation in the Arizona Tax Court, which, in a consolidated action, followed *Arizona Tax Research* and granted summary judgment in favor of the County. On appeal, the court of appeals reversed, declining to follow the holding in *Arizona Tax research* that the change in valuation resulted in "net new construction." *Salt River Project*, 171 Ariz. at 484, 831 P.2d at 860.[3] We granted review.

## DISCUSSION

### I. The Constitutional and Statutory Levy Limits

In 1980, the Arizona electorate approved and adopted Article 9, § 19 of the Arizona Constitution, which provides as follows:

---

1. A levy limit is the cap placed on property taxes by virtue of a provision of a 1980 amendment to the Arizona Constitution. *See* Ariz.Const. art. 9, § 19; A.R.S. § 42–301. The relevant portion of these sections are set forth *infra* in section I of the Discussion.

2. The formula in A.R.S. § 41–301(A) is explained *infra* in sections I and II of the Discussion.

3. The court of appeals also ruled on a number of other issues on which we denied review.

(1) The maximum amount of ad valorem taxes levied by any county, city, town or community college district shall not exceed an amount two per cent greater than the amount levied in the preceding year.

\* \* \* \* \* \*

(4) The limitation prescribed by subsection (1) shall be increased each year to the maximum permissible limit, whether or not the political subdivision actually levies ad valorem taxes to such amounts.

\* \* \* \* \* \*

(6) The limitation prescribed by subsection (1) of this section shall be increased by the amount of ad valorem taxes levied against property not subject to taxation in the prior year and shall be decreased by the amount of ad valorem taxes levied against property subject to taxation in the prior year and not subject to taxation in the current year. Such amounts of ad valorem taxes shall be computed using the rate applied to property not subject to this subsection.

(7) The legislature shall provide by law for the implementation of this section.

The effect of art. 9, § 19 is that, subject to certain enumerated exceptions, the yearly increase in the maximum primary property tax levy of a city, county, or other governmental subdivision is limited to 2%, adjusted to reflect the addition of property to or removal of property from the tax rolls.

Pursuant to art. 9, § 19(7), the legislature enacted A.R.S. § 42–301, which implements the constitutional levy limitation provision as follows:

A. In addition to any other limitations that may be imposed, the counties, cities, including charter cities, towns and community college districts shall not levy primary property taxes in any year in excess of an aggregate amount computed as follows:

1. Determine the maximum allowable primary property tax levy limit for such jurisdiction for the prior tax year.

2. Multiply paragraph 1 by 1.02.

3. Determine the assessed value for the current tax year of all property in such entity that was subject to tax in the preceding tax year.

4. Divide the dollar amount determined in paragraph 3 by one hundred and then divide the dollar amount determined in paragraph 2 by the resulting quotient. The result rounded to four decimal places is the maximum allowable tax rate for the jurisdiction.

5. Determine the finally equalized valuation of all property, less exemptions, appearing on the tax roll for the current tax year including an estimate of the unsecured property tax roll determined pursuant to § 42–304.01.

6. Divide the dollar amount determined in paragraph 5 by one hundred and then multiply the resulting quotient by the rate determined in paragraph 4. The resulting product is the maximum allowable primary property tax levy limit for the current fiscal year for all political subdivisions.

The statute thus operates as follows. The maximum tax *rate* is equal to the prior year's maximum levy limit multiplied by 102, then divided by the current assessed value of all property subject to tax in the prior year. Because the rate is based on a proportion, the lower the figure used for the current value of property subject to tax in the prior year, the higher the maximum permissible tax rate for the current tax year.

The maximum tax *levy* for the current year in each taxing district is equal to the prior year's maximum levy multiplied by 1.02, then multiplied by a proportion reflecting the addition or deletion of property to the tax rolls from the prior year. The levy formula thus implements the mandate of art. 9, § 19 of the Constitution by first increasing the prior year's maximum levy by 2%, and then increasing or decreasing the maximum levy to reflect the proportionate change in the size of the tax base resulting from the addition to or removal of property from the tax roll. The use of a proportion prevents the maximum levy from increasing solely as a function of inflation or other increase in the value of assessed property because any such in-

crease is reflected in both the numerator and the denominator.

Finally, as the parties have observed, the effect of these calculations is cumulative. That is, the higher the maximum permissible levy in one year, the higher the maximum tax rate (and, consequently the maximum levy) the next year, and so on into the future. Conversely, because the adjustment to the levy limit attributable to changes in the size of the tax base is calculated through a proportion, if the growth of the tax base is not reflected in an increase in the levy limit in the year that it occurs, that growth is "lost" forever, and the maximum tax rates and levies in the future will thereafter be smaller than they otherwise would have been.[4]

## II. The Valuation of Utility Property and the Calculation of Levy Limits

The rules for valuing utility property are currently set forth in A.R.S. § 42–144.02. To summarize, operating utility plants are valued according to "original plant in service cost" (OPIS) less certain adjustments. A.R.S. § 42–144.02(B). The OPIS value is the actual cost of acquisition or construction. A.R.S. § 42–144.02(H)(5). Before becoming operational, utility plants are valued as "construction work in progress" (CWIP), which is 50% of the amount expended in building the plant as of December 31 of the preceding calendar year. A.R.S. § 42–144.02(C), (H)(1).

This system of valuation has a direct effect on the calculation of the maximum levy in the tax year in which new utility property first becomes operational and, as a result, is first taxed as OPIS rather than CWIP. The dispute in this case arises as a consequence of this change in valuation.

As we noted above, the levy limit formula of A.R.S. § 42–301(A) contains a propor-

tion used to account for additions to and deletions from the tax rolls for the current tax year. In that proportion, the current assessed value of all property subject to taxation in the current tax year is divided by the current assessed value of property subject to taxation in the prior tax year. If we assume for purposes of illustration that no *other* property has been added to or deleted from the tax rolls, we can isolate the question of how the utility property in question should be treated.[5] The numerator contains the current (OPIS) value of the utility property subject to taxation in the current year. The question in this case is what value to use in the denominator as the current value of utility property subject to taxation in the prior tax year. The County used the difference of OPIS-minus-CWIP, or the value for the previous year. Because OPIS-minus-CWIP is roughly (due to adjustments) 50% of OPIS, the maximum levy for the 1986 tax year—and thus the maximum rate at which all property, including utility property, is taxed—increased. This is the outcome reached in *Arizona Tax Research*. The result treats the new valuation figure—OPIS—as if it reflected new construction.

On the other hand, SRP argues that the OPIS value, as the current value of the property completed but taxed as CWIP in the previous year, should be used in the denominator. Because the numerator and denominator would then be equivalent, there would be no increase in the maximum levy or tax rate—despite the fact that the tax base actually increased. This is the result reached in the present case and its companion, *El Paso Electric Co. v. Maricopa County*, 171 Ariz. 489, 831 P.2d 865 (Ct.App.1992).

The narrow issue, thus, is whether the OPIS or the OPIS-minus-CWIP value should be used when calculating "the as-

---

4. Of course, the effect of the proportional adjustment works both ways; decreases in the tax base not reflected in the current levy limit will cause future tax rates and levy limits to be greater than they otherwise would be. Thus, if the utilities were to take portions of various plants *out* of operation, it would be in their interest to take exactly the opposite position from that which they assert today.

5. We isolate the value of the utility plant for conceptual purposes only, recognizing that the magnitude of the effect of any addition of utility property would depend on the size of the rest of the tax base.

sessed value for the current tax year of all property in such entity that was subject to tax in the preceding tax year," A.R.S. § 42–301(A)(3), pursuant to the constitutional mandate that the levy limit be "increased by the amount of ad valorem taxes levied against property not subject to taxation in the prior year and shall be decreased by the amount of ad valorem taxes levied against property subject to taxation in the prior year and not subject to taxation in the current year." Ariz.Const. art. 9, § 19(6).

## III. The Court of Appeals' Opinions

### A. *Arizona Tax Research*

In *Arizona Tax Research*, the court of appeals concluded that "when utility property which has been under construction is placed into service there is *new property* not subject to taxation in the prior year equal to the difference between the 'CWIP' value and the 'OPIS' value." 162 Ariz. at 96, 781 P.2d at 73 (emphasis added). The court reasoned that the legislature created the OPIS/CWIP distinction in recognition that a utility plant is useless until placed into service,[6] not to keep 50% of a plant's construction cost from being included as an increase in the tax base for the purpose of calculating the maximum levy. *Id.* The court rejected the "literal interpretation" of A.R.S. § 42–301(A)(3) adopted in Atty.Gen. Op. No. I87–029 (Feb. 12, 1987), which concluded that the plant was subject to taxation in the previous tax year and thus the only difference in the current tax year was that the statutory tax reduction had expired. The court explained that such a "construction would defeat the constitutional policy of allowing the levy limitation to grow by net new construction. Statutes should not be so construed." *Id.* (citing *Perez v. Maricopa County,* 158 Ariz. 40, 760 P.2d 1089 (Ct.App.1988)).

### B. *Salt River Project*

In the case before us, the court of appeals declined to follow *Arizona Tax Re-*

search, believing that it had "failed to fully consider a number of settled principles of constitutional and statutory interpretation" in its analysis of art. 9, § 19 and A.R.S. § 42–301. *Salt River Project,* 171 Ariz. at 482–483, 831 P.2d at 858–859.

The court determined that "both the plain language and the underlying policy" of art. 9, § 19 and A.R.S. § 42–301 required a decision in favor of SRP. *Id.* at 484, 831 P.2d at 860. In reaching this conclusion, the court's majority stated that

> the dispositive question is whether, in adopting article IX, section 19, the people of Arizona intended to permit property taxes to rise regardless of the levy limitation when statutory valuations of property increased due to changes in use or usefulness from one year to the next [rather than through addition of "new property" to the tax roll]. In our opinion, they clearly did not.

*Id.* at 484, 831 P.2d at 860. In the view of *Salt River Project*'s majority, the difference in the value of the utility property from one tax year to the next was based on different statutory methods for evaluating CWIP and OPIS, and not on the addition or creation of any "new" taxable property; rather, "[t]he only change that occurred in those years was that each utility plant was placed into service and its statutory valuation increased as a result." *Id.* The court therefore concluded that because the utility property in question was put on the tax rolls (albeit at 50% of its cost) in 1985, and was not added in 1986, the County incorrectly failed to use the plant's OPIS value as the current value of all property subject to taxation in the 1985 tax year in the denominator when calculating its 1986 maximum tax levy.

The dissenting opinion reasoned that the court should have followed *Arizona Tax Research* under the principle of stare decisis. *Id.* at 484, 831 P.2d at 864 (Fidel, J. dissenting). Further, on the merits, the dissent disputed the majority's assertion that "the plain language ... of the Arizona

---

**6.** This is true even if the plant is fully completed and awaiting only regulatory approval before beginning operation, because only when put into service does a plant begin to generate revenue.

Constitution" compelled its result, and argued that the language of art. 9, § 19 was not "so plain in application to the question of this case." *Id.* at 488, 831 P.2d at 864. The dissent explained that

> [t]he Constitution speaks of "property subject to taxation" from one year to the next, but does not specify what occurs when property, between tax years, undergoes the kind of qualitative transformation that *Arizona Tax Research* describes. We should not pretend that those who voted article IX, section 19, into the Constitution "intended" a precise answer to that question. In this, like many questions of constitutional or statutory interpretation, the answer cannot be deduced; it must be chosen by practical application of a phrase to an uncontemplated event. ... The court in *Arizona Tax Research* approached the issue in this spirit, and I find its resolution practical, sensible, and sound.

*Id.* at 488, 831 P.2d at 864.

We agree with the dissent, but we believe the arguments advanced by the majority require us to explain further why we agree with the analysis of *Arizona Tax Research* and reject that advanced in *Salt River Project.*

IV.  Rationale

We recognize, of course, the concept of original intent in interpreting our constitution.  Nevertheless, no matter what result might be reached by applying constructs contained in the various canons of statutory and constitutional construction, common sense must also inform our decision. Absent some explicit historical statement, we are unwilling to believe that, in adopting art. 9, § 19, the voters of this state specifically intended any particular use of OPIS or CWIP in the numerator or denominator of the levy limit formulas later adopted by the legislature to implement the constitutional amendment.  *See United States v. Superior Court*, 144 Ariz. 265, 275–76, 697 P.2d 658, 668–69 (1985) ("[C]onstitutional provisions may [not] be interpreted as if they were simple contracts. Fine semantic or grammatical distinctions,

legalistic doctrine, and parsing of sentences may lead us to results quite different from the objectives which the framers intended to accomplish."); *Kerby v. Luhrs,* 44 Ariz. 208, 214, 36 P.2d 549, 551 (1934) (constitutions "are by necessity general in their nature, and presumably intended to remain in force for a long period of time" and must therefore "be construed in the light of their purpose").

■  Nor do we find any legislative history to indicate that in adopting the statutes relating to OPIS and CWIP the legislature adverted to so obscure an issue as that presented in this case.  Thus, while we base our interpretation of constitutional provisions and statutes on their text, in cases where they contain no explicit provision we must choose an interpretation that will best serve and carry out the apparent goals and policies of those responsible for their adoption.  *Tracy v. Superior Court,* 168 Ariz. 23, 31, 810 P.2d 1030, 1038 (1991) ("where there is no contrary textual or legislative expression of intent on a particular application, we must apply the statute in such a manner as will best serve the legislature's purposes, policies, and goals"); *Frye v. South Phoenix Volunteer Fire Co.,* 71 Ariz. 163, 168–69, 224 P.2d 651, 654–56 (1950) (statutes must be interpreted in harmony with the constitution).

■  Accordingly, A.R.S. § 42–144.02, for the purposes of calculating levy limits, must be interpreted in a way consistent with the mandate of art. 9, § 19.  As noted in *Arizona Tax Research,* 162 Ariz. at 96, 781 P.2d at 73, the constitutional policy clearly is to allow "the levy limitation to grow by net new construction."  Any other interpretation of the provision would freeze the tax levy and hold it constant no matter what growth the state might experience and what governmental needs might be created by such growth.  Surely neither the legislature nor the people intended to bankrupt the state by excluding the value of new construction from the limitation on increasing the total tax levy.

Our detailed explanation of the statutory levy limit formulas demonstrates how the electorate, by announcing a policy and au-

thorizing the legislature to adopt implementing legislation, has crafted a complex system of calculations designed to achieve a specific result: the implementation of the constitutional provision limiting the increase in maximum levies to 2% per annum—but with an adjustment to reflect additions to and deletions from the tax rolls. The *Salt River Project* court's interpretation of § 42–144.2 would in the present case prevent 50% of the real value of Unit I from ever adding to the levy limit, in contravention of the words of and evident policy established by art. 9, § 19.

We agree with *Salt River Project*, 171 Ariz. at 484, 831 P.2d at 860, that the electorate did not intend the levy limit to increase whenever property increases in value—whether through inflation, market forces, or the legislature's policy decisions. We believe, however, that in holding that a county should use the difference between CWIP and OPIS value in the denominator when calculating its levy limit in the year after a utility plant is put into service, *Arizona Tax Research* properly harmonized the legislature's choice to tax plants as CWIP until regulatory certification rendered them commercially operational with the constitutional policy of excluding new construction from the limitation on increases in property taxes. *Arizona Tax Research* recognized the potential effect of A.R.S. § 42–144.22 on the levy limit calculation, and consequently denominated OPIS-minus-CWIP as what in effect it was: property added to the tax rolls as "net new construction." We agree with its analysis and conclusion.

The total value of construction reflected in OPIS may not have been new in the sense that the physical work was actually completed in 1985. It was "new" in 1986, however, in the sense that the legislative definition and classification as CWIP kept the full value of the construction completed in 1985 off the tax rolls until regulatory certification was obtained in June 1985. No matter what constructs are used, absent explicit language in the statute we refuse to believe that in protecting the utilities from full taxation of a newly constructed plant until regulatory certification

was received and the plant put in service, the legislature also intended to limit the County's ability to set its tax levy limit at a figure that reflects realistic consideration of the value of new taxable property. The policy described in art. 9, § 19 does not support such a result, even if it were possible under A.R.S. § 42–301(A). The tax break given to utility plants not yet in use was intended to be a temporary accommodation to economic reality, not a permanent windfall.

## DISPOSITION

The County properly used the OPIS-minus-CWIP value in the denominator in calculating its 1986 maximum primary property tax levy limit in order fully to reflect the addition of Springerville Generating Station Unit I to the tax rolls. That portion of the court of appeals opinion in *Salt River Project* addressing the calculation of maximum levy limits pursuant to art. 9, § 19 and A.R.S. § 42–301(A) is vacated. The judgment of the Arizona Tax Court is affirmed. The opinion in *Arizona Tax Research* is approved.

MOELLER, Vice C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.