IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

COCONINO COMMUNITY COLLEGE DISTRICT,
*Plaintiff/Appellee,*

*v.*

THE PROPERTY TAX OVERSIGHT COMMISSION,
*Defendant/Appellant.*

No. 1 CA-TX 25-0001

FILED 04-15-2026

Appeal from the Arizona Tax Court
No.  TX2024-000143
The Honorable Erik Thorson, Judge

**AFFIRMED**

COUNSEL

Gust Rosenfeld, P.L.C., Phoenix
By Charles W. Wirken, Nathan D. Schott
*Counsel for Plaintiff/Appellee*

Bergin, Frakes, Smalley & Oberholtzer, PLLC, Phoenix
By Brian M. Bergin, Anthony R. Napolitano
*Counsel for Defendant/Appellant*

---

**OPINION**

Presiding Judge Andrew J. Becke delivered the opinion of the Court, in which Judge Kent E. Cattani and Chief Judge Randall M. Howe joined.

---

**B E C K E**, Judge:

¶1 The Property Tax Oversight Commission ("Commission") appeals the tax court's decision that the Coconino Community College District ("District") adopted a primary property tax levy within the legal limit. For reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In May 2022, Coconino County voters approved the District's request to reset the base levy limit from about $9 million to about $14.7 million beginning in tax year 2022. The ballot language told voters a "YES" vote would reset the levy limit to about $14.7 million "beginning in tax year 2022," and that new amount "shall be the base for determining levy limitations . . . for subsequent years." By statute, this increase was phased in incrementally over the following three years. *See* A.R.S. § 42-17056(F)(1)(a)–(c). Specifically, for the first tax year after voter approval, the levy limit equals the original base levy limit plus one-third of the difference between the original base levy limit and the new base levy limit. For the second tax year, the levy limit equals the original levy limit plus two-thirds of the difference between the original levy limit and the new levy limit. Finally, in the third tax year, the base levy limit equals the voter approved amount.

¶3 For tax year 2022, the District phased in one-third of the new base levy limit, and the Commission approved the District's calculations. For tax year 2023, however, the District phased in another one-third of the new base levy limit, but also included a 2% "growth" increase and a "new construction" increase to reflect the change in property subject to taxation, as required by the Arizona Constitution. Ariz. Const. art. 9, § 19 (1), (4), (6).

¶4 The Commission rejected the District's calculations for the 2023 levy limit, stating the calculations were incorrect and exceeded the maximum allowable amount, because the District included the 2% "growth" and "new construction" increases. The District objected,

petitioned the Commission to reconsider its decision, and requested a hearing.

**¶5**  After a hearing, the Commission denied the District's petition to reconsider, relying on the phase-in process language from A.R.S. § 42-17056(F)(1)(b), (c). Specifically, the Commission concluded that the levy limit for tax year 2023 "must be less than or equal to the [original levy limit] plus two-thirds of the difference" between the original levy limit and the new levy limit, and that the 2024 tax year levy limit "must be less than or equal to the [new levy limit]." *Id.*

**¶6**  The District appealed this decision to the tax court, which reversed, finding that the District's position correctly harmonized the Arizona constitutional provisions with A.R.S. § 42-17056(F). The court instructed the Commission to "approve the addition of the growth and new construction levy limit increases during the three-year phase-in period of the base levy limit increase."

**¶7**  Upon entry of a final judgment, the Commission timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -170(C), and -2101(A)(1).

## DISCUSSION

**¶8**  At issue is whether a community college district can include the 2% "growth" increase and the "new construction" increase as required by the Arizona Constitution while phasing in a voter-approved base levy limit reset.

**¶9**  We review the interpretation of constitutional provisions and statutes *de novo. Ross v. Bennett*, 228 Ariz. 174, 176, ¶ 6 (2011). We start with the applicable text, *Ariz. Free Enter. Club v. Hobbs*, 253 Ariz. 478, 482, ¶ 10 (2022); *In re Drummond*, 257 Ariz. 15, 18, ¶ 5 (2024), and unless ambiguous, apply it without resorting to other means of textual construction, *Heath v. Kiger*, 217 Ariz. 492, 494, ¶ 6 (2008); *In re Drummond*, 257 Ariz at 18, ¶ 5.

**¶10**  In interpreting statutory and constitutional provisions, we do so not in isolation but in context with other provisions covering the same subject matter. *Roundtree v. City of Page*, ___ Ariz. ___, ___, ¶ 13, 573 P.3d 65, 69 (2025). However, "a statute cannot circumvent or modify constitutional requirements." *Fann v. State*, 251 Ariz. 425, 434, ¶ 24 (2021). If the statutory term is ambiguous, then "we may use alternative methods of statutory construction, including examining the rule's historical background, its spirit and purpose, and the effects and consequences of competing

interpretations." *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142, ¶ 17 (2024).

¶11        The relevant provisions of Article 9, Section 19, of the Arizona Constitution provide:

> (1) The maximum amount of ad valorem taxes levied by any county, city, town or community college district shall not exceed an amount two per cent greater than the amount levied in the preceding year.
>
> . . . .
>
> (4) The limitation prescribed by subsection (1) shall be increased each year to the maximum permissible limit, whether or not the political subdivision actually levies ad valorem taxes to such amounts . . . .
>
> (5) The voters, in the manner prescribed by law, may elect to allow ad valorem taxation in excess of the limitation prescribed by this section.
>
> (6) The limitation prescribed by subsection (1) of this section shall be increased by the amount of ad valorem taxes levied against property not subject to taxation in the prior year and shall be decreased by the amount of ad valorem taxes levied against property subject to taxation in the prior year and not subject to taxation in the current year . . . .

¶12        Part (1) allows for a 2% "growth" increase to the maximum levy limit every year. Part (4) makes the 2% "growth" increase to the maximum levy limit mandatory regardless of whether the entity levies the maximum amount of primary property taxes. Part (6) mandates a "new construction" increase or decrease to the maximum levy limit every year to reflect the increase or decrease of property subject to taxation. Part (5) allows voters to approve taxation in excess of the maximum levy limit.

¶13        The legislature, as it is authorized to do, has enacted statutes implementing this constitutional provision. Ariz. Const. Art. 9, § 19(7). A.R.S. § 42-17051 implements Parts (1), (4), and (6) by spelling out the specific calculations for determining the maximum levy limit each year. These calculations include both the 2% "growth" increase and the "new construction" increase. Section 42-17202 provides the procedure a community college district must follow when asking the voters to approve

a maximum levy limit in excess of the limitation spelled out in Article 9, Section 19. The voters do so by approving temporary secondary property taxes.

¶14        Section 42-17056 establishes the procedure for setting up an initial base levy limit for entities that did not levy primary property taxes in the prior year. This statute also provides entities with the procedure for resetting the base levy limit after a certain number of years. *Id.* at (F).

¶15        The procedure to set the initial base levy limit is as follows: "If a . . . community college district did not levy primary property taxes in the preceding tax year, the governing body shall submit a proposed amount to be raised by primary property taxes for approval of the voters." § 42-17056(A). If approved by the voters, the amount "will be the base for determining levy limitations for . . . subsequent fiscal years." § 42-17056(B).

¶16        To reset the base levy limit, a community college district must wait at least twenty but not more than thirty-five years after approving the initial base levy limit to "resubmit a proposed amount . . . for approval by the voters." § 42-17056(F). If the voters approve, the implementation is as follows:

> (a) The first tax year following approval pursuant to this paragraph must be less than or equal to the previously approved amount plus one-third of the difference between the previously approved amount and the amount approved pursuant to this paragraph.
>
> (b) The second tax year following approval pursuant to this paragraph must be less than or equal to the previously approved amount plus two-thirds of the difference between the previously approved amount and the amount approved pursuant to this paragraph.
>
> (c) The third tax year following approval pursuant to this paragraph and each subsequent tax year must be less than or equal to the amount approved pursuant to this paragraph.

*Id.* at (F)(1).

¶17        The Commission urges us to interpret § 42-17056(F) as forbidding the two increases spelled out in the Arizona Constitution and A.R.S. § 42-17051 during this phase-in process. Specifically, it argues that because § 42-17056(F)(1)(a)–(c) requires the levy limit during the first,

second, and third years following voter approval to be "less than or equal to the [new levy limit]," it must be less than $14.7 million, the new base levy limit by year three. Although the Commission's position has some logic, it is inconsistent with the overall statutory scheme.

**¶18**      Section 42-17056 deals with setting and resetting the *base* levy limit from which the *maximum* levy limit for subsequent years is calculated. Article 9, Section 19 specifically deals with the increases to the *maximum* levy limit. *See* Ariz. Const. art. 9, § 19 ("The *maximum* amount of ad valorem taxes levied . . . shall not exceed an amount two per cent greater than the amount levied in the preceding year . . . .") (emphasis added).

**¶19**      "Base" is generally understood to be "the bottom of something considered as its support." *See Base*, Merriam-Webster, https://www.merriam-webster.com/dictionary/base (last visited February 12, 2026). Therefore, the *base* levy limit is the bottom or foundation of the levy limit. The section's title, "Initial base levy limit if no primary property taxes were levied in the preceding tax year; subsequent levy amount" indicates the legislature intended to make this section about setting and resetting the *base* levy limit. *See State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 102, ¶ 13 (2014) ("[S]tatutory title headings . . . can aid in its interpretation.").

**¶20**      "Maximum" is defined as "the greatest quantity of value attainable or attained." *Maximum*, Merriam-Webster, https://www.merriam-webster.com/dictionary/maximum (last visited February 12, 2026). The *maximum* levy limit is increased *every* year by adding a 2% "growth" increase. There is also a constitutional "new construction" increase (or decrease) to the previous year's levy limit depending on whether the amount of property subject to taxation has increased or decreased. Article 9, Section 19's annual increases (or decreases) to the maximum levy limit are mandatory, and distinct and separate from the base levy limit reset allowed by Section 42-17056(F).

**¶21**      A district initially sets its base levy limit through an election process. A.R.S. § 42-17056(A)–(E). After at least twenty but not more than thirty-five years from setting the initial base levy, a district may resubmit a proposed amount to *reset* the base levy limit. § 42-17056(F). Subsection F specifically states a community college district "with a primary property tax levy that was *initially established pursuant to this section* may *resubmit a proposed amount*." (Emphasis added). The plain language indicates this statute specifically deals with the *base* levy amount. When voters approve a base limit reset, they are voting to start the process anew with a different

base number. As the ballot language told the voters, this newly adopted amount—"beginning in tax year 2022"—would "be the *base* for determining levy limitations . . . for subsequent years." (Emphasis added).

**¶22**        It is through this statute that the District reset its base levy limit to about $14.7 million in May 2022. Part of the Commission's argument is that Section 42-17056(F)(1) explicitly states that the tax years following approval of the new base levy limit "must be less than or equal to the proposed amount," and thus, the actual levy imposed must be less than or equal to $14.7 million. Not so. The *base* levy limit must be less than or equal to the proposed amount. We are unaware of any constitutional or statutory language that states the two constitutionally required increases are satisfied by resetting the base levy limit under A.R.S. § 42-17056, or that suggests these increases are paused for the three-year phase-in of the new base levy limit.

**¶23**        The Arizona Supreme Court has recognized the importance of these annual increases. *Salt River Project Agric. Improvement & Power Dist. v. Apache Cnty.*, 172 Ariz. 337, 340 (1992). The Court noted that failing to include the two increases each year results in growth that is "'lost' forever." *Id.* The policy underlying Article 9, Section 19 is to allow growth of the maximum levy limit by 2%, increased or decreased to reflect "the proportionate change in the size of the tax base resulting from the addition to or removal of property from the tax roll." *Id.* at 339. And "[a]ny other interpretation of the provision would freeze the tax levy and hold it constant no matter what growth the state might experience and what governmental needs might be created by such growth." *Id.* at 342. Thus, any "freeze" of these constitutionally required increases would be inappropriate.

**¶24**        The Commission's argument that resetting the base levy limit under A.R.S. § 42-17056 "overrides" the maximum levy limit increases is similarly unpersuasive. Specifically, the Commission asks us to conclude that the District can either reset its base levy limit *or* it can receive the constitutionally required increases, but not both, since the first supplants the second. However, § 42-17056 is not the statutory mechanism the legislature created to "override" the maximum levy limit.

**¶25**        The legislature clearly provided for an override of the maximum levy limit through A.R.S. § 42-17202 using secondary property taxes, which is aptly titled "Community college district levy limit override." *See* A.R.S. § 42-17202(A)–(C) (providing a community college district with the means to request voters approve taxes in excess of the maximum levy

limit); *see also Mountain States Legal Found. v. Apache Cnty.*, 146 Ariz. 479, 481 (App. 1985) (noting the legislature permitted voters to override the limitation through implementation of secondary property taxes). As discussed *supra* ¶¶ 18–22, § 42-17056 is not an override—it resets the base levy limit that is used to calculate the maximum levy limit in subsequent years. Additionally, even an override under § 42-17202 is not an "either/or" proposition. After receiving its annual increases, a district may ask the voters to approve secondary property taxes in excess of the year's limitation. *See* A.R.S. § 42-17202(A).

**¶26**　　　　The Commission also argues that including the two increases subverts Article 9, Section 19's purpose: to limit taxation. But the tax court's ruling did not remove limits on taxation; instead it acknowledged required limits while permitting constitutionally mandated increases. Although the purpose of Article 9, Section 19 is to curb "excessive spending," it also specifically mandates 2% "growth" and "new construction" increases each year to the maximum allowable primary property taxes. *See Mountain States Legal Found.*, 146 Ariz. at 480–81. Allowing the District to take these annual increases after a voter-approved reset of the base levy limit does not subvert this purpose—it upholds it by capping annual increases, albeit at a level slightly higher than what the Commission would prefer.

**¶27**　　　　Finally, the Commission's argument that including the 2% "growth" increase and "new construction" increase in the phase-in calculations "would create great uncertainty for voters evaluating the ballot measure to approve a levy reset" is similarly unpersuasive. The ballot language told voters that, if approved, the District would reset the levy limit to about $14.7 million "beginning in tax year 2022," and that figure would be the base "for determining levy limitations . . . for subsequent years." A reasonable voter would presumably read that to mean (1) the base levy limit will be about $14.7 million starting in 2022 and (2) future levy limitations will be based on this new base levy limit. Pausing the two increases, increases that happen *every* year, does not track the statutory language or otherwise create "clarity" or "predictability" as the Commission contends.

**¶28**　　　　In sum, construing the constitutional and statutory provisions in harmony and applying their plain language, we hold that the District can include the 2% "growth" increase and the "new construction" increase provided for under Article 9, Section 19 of the Arizona Constitution during the phase-in of the new base levy limit under A.R.S. § 42-17056. *See Fragoso v. Fell,* 210 Ariz. 427, 431–32, ¶ 13 (App. 2005) ("We endeavor to harmonize statutes . . . with the Arizona Constitution.")

**CONCLUSION**

**¶29** We affirm. The District requests attorneys' fees on appeal under A.R.S. § 12-380. Because the District failed to request attorneys' fees on that basis before the superior court, we deny its request. *Ayres v. Red Cloud Mills, Ltd.*, 167 Ariz. 474, 480 n.6 (App. 1990) (declining to consider claim for attorneys' fees under statutory authority that was not asserted in the superior court). As the successful party on appeal, the District is entitled to recover taxable costs upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A).



MATTHEW J. MARTIN • Clerk of the Court

**FILED**: JR