933 P.2d 1289

MARICOPA COUNTY, Plaintiff–Appellee,

v.

PROPERTY TAX OVERSIGHT COMMISSION, Defendant–Appellant.

No. 1 CA–TX 95–0019.

Court of Appeals of Arizona, Division 1, Department T.

Feb. 27, 1997.

Maricopa County Attorney Division of County Counsel by Sandor Shuch, Deputy County Attorney, Phoenix, for Plaintiff-Appellee.

Grant Woods, Attorney General by Patrick Irvine, Assistant Attorney General, Phoenix, for Defendant-Appellant.

## OPINION

GARBARINO, Judge.

The Property Tax Oversight Commission (PTOC) appeals from the grant of summary judgment in favor of Maricopa County (the County). PTOC contends that sums paid by the County as property tax refunds for prior years fall within the County's levy limit for the year of payment pursuant to Article 9, section 19 of the Arizona Constitution and Arizona Revised Statutes Annotated (A.R.S.) sections 42–301 to 313 (1991 & Supp.1996). We find that the trial court properly granted summary judgment and affirm.

## FACTUAL AND PROCEDURAL HISTORY

In 1990, this Court decided *Hayden Partners Ltd. v. Maricopa County*, 166 Ariz. 121, 800 P.2d 987 (App.1990). In 1994, based on our decision in *Hayden Partners*, the tax court entered a stipulated judgment against the County and the Arizona Department of Revenue refunding property taxes collected for tax years 1986 through 1991. The County's portion of this refund was $326,876. To meet its needs for 1994, the County decided that it was necessary to levy the maximum amount permitted by its primary property tax levy limit. In addition, the County levied $332,793 over and above its levy limit to pay its portion of the refund judgment.

PTOC, a commission created in 1987 to provide a continuing review of property tax administration throughout the state,[1] determined that the additional $326,876 should have been included in the County's levy limit and that the 1994 levy would have to be reduced by that sum. The County brought this action in the tax court pursuant to A.R.S. section 42–307(C).

On cross-motions for summary judgment, the tax court ruled for the County. The tax court determined that the issue was "whether an appropriation in 1995 to pay tax refunds ordered by a superior court in 1994 for taxes collected in prior years is subject to the levy limit under Ariz. Const., art. 9, § 19(1) and (4)." It wrote:

> The Constitutional provision is rather clear: it limits budget growth to 2% and it contains no exceptions. The courts have created some, however. One is involuntary tort judgments against the government. See *Garcia v. City of South Tucson*, 135 Ariz. 604, 663 P.2d 596 (1983). Tax limits, our courts have said, apply to voluntary acts by government, not involuntary acts. A tort and the resulting judgment are involuntary acts. This Court can see no difference between a tort judgment and a tax judgment as far as this case is concerned; both are involuntary in the sense that they could not be reasonably anticipated. If one is an exception, it seems reasonable that the other is also.

PTOC timely appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

---

1. A.R.S. §§ 42–306 (1991) and 42–307 (Supp. 1996), added by 1987 Ariz. Sess. Laws ch. 204, § 5.

## DISCUSSION

Article 9, section 19 of the Arizona Constitution provides:

(1) The maximum amount of ad valorem taxes levied by any county, city, town or community college district shall not exceed an amount two percent greater than the amount levied in the preceding year.

. . . .

(4) The limitation prescribed by subsection (1) shall be increased each year to the maximum permissible limit, whether or not the political subdivision actually levies ad valorem taxes to such amounts.

. . . .

(6) The limitation prescribed by subsection (1) of this section shall be increased by the amount of ad valorem taxes levied against property not subject to taxation in the prior year and shall be decreased by the amount of ad valorem taxes levied against property subject to taxation in the prior year and not subject to taxation in the current year. Such amounts of ad valorem taxes shall be computed using the rate applied to property not subject to this subsection.

(7) The Legislature shall provide by law for the implementation of this section.

In *Salt River Project Agricultural Improvement and Power District v. Apache County*, 172 Ariz. 337, 342–43, 837 P.2d 139, 144–45 (1992), our supreme court made it clear that Article 9, section 19 is not to be strictly interpreted, but broadly construed to accomplish its evident purposes. The court relied in part on its decision in *Kerby v. Luhrs*, 44 Ariz. 208, 214, 36 P.2d 549, 551 (1934), in which it stated that constitutions "are by necessity general in their nature, and presumably intended to remain in force for a long period of time," and must accordingly "be construed in the light of their purpose." *Salt River*, 172 Ariz. at 342, 837 P.2d at 144. In *Salt River*, the court determined that Article 9, section 19 should be construed to permit a taxing authority's levy limit to in-crease in the amount of "net new construction." *Id.* The property in question in that case was on the tax roll in both the prior and current tax years, and was revalued statutorily upon being placed in service for the first time in the current year. *Id.* at 338, 837 P.2d at 140. Despite the literal language of Article 9, section 19 suggesting that only property newly placed on the tax roll in the current year was to increase the levy limit for that year, the court held that the levy limit was to be raised in the amount by which the valuation of the property had increased from the prior year. *Id.* at 342–43, 837 P.2d at 144–45.

▮ Using this same approach, we conclude that there is an implicit limitation on the scope of Article 9, section 19: to restrain only planned or clearly foreseen expenditures of the type over which the taxing authority can exercise a significant degree of control through its budgeting process. The text of the "Legislative Council Arguments Favoring Proposition 107" contained in the publicity pamphlet distributed to voters before the special election of June 3, 1980 supports this analysis. The pamphlet stated in part:

Today's rampant inflation is due in large part to excessive spending by all levels of government. Property taxes imposed by local governments constitute a significant burden on many taxpayers who must live within very tight budgets. It is only fair that local governments be required to live under the same types of budget restrictions as households and businesses. *By prescribing limitations on property tax increases, this proposition would provide a balanced and effective restraint on the excessive demands of local governments to spend tax revenues.*

Both governments and taxpayers will be able to *plan their budgets more efficiently* since future property tax levies will be much more predictable.

Rose Mofford, Arizona Secretary of State, Publicity Pamphlet for Special Election of June 3, 1980 at 54 (emphasis added); *see also Mountain States Legal Foundation v.*

*Apache County,* 146 Ariz. 479, 480, 706 P.2d 1246, 1247 (App.1985) ("The rationale underlying the amendment is that excessive spending can be curbed by placing limits on the property taxation powers of local governmental units.").

Arizona courts have long promoted this same policy in applying statutory taxing and expenditure limitation provisions. In *Town of Flagstaff v. Gomez,* 29 Ariz. 481, 485, 242 P. 1003, 1004 (1926), the supreme court considered paragraph 1850 of the Revised Statutes of Arizona of 1913, Civil Code, which one of the parties contended prohibited a town common council from levying a property tax in excess of 20 mills per dollar of assessed valuation, and defined the particular municipal purposes for which the tax proceeds could be spent. The court nevertheless upheld an order requiring the town to levy a special tax in excess of the statutory limit to pay a tort judgment. *Id.* at 484–87, 242 P. at 1004–5. The court stated:

> The general rule is that limitations of the nature set forth in the provisions above quoted refer only to obligations voluntarily incurred by the municipality, and have no bearing upon judgments rendered against it by reason of its torts. This has been repeatedly held in cases where the total amount of indebtedness to be incurred by a municipality was restricted by law, and the same reasoning forces us to the conclusion that a limitation on the amount of annual taxes to be raised is of the same nature.

*Id.* at 485–86, 242 P. at 1004.

Under pre–1980 Arizona law, tort judgments were not the only charges against public entities that were exempt from statutory budget limitations. *Wise v. First National Bank,* 49 Ariz. 146, 65 P.2d 1154 (1937), concerned a statute that required a city to purchase, from its general fund, property within its corporate limits that was subject to delinquent improvement assessments. The court rejected the contention that this statute conflicted with Arizona Revised Code 1928, section 379, which restricted non-char-ter cities' property tax levies to 20 mills per dollar of assessed valuation. *Id.* at 163–65, 65 P.2d at 1161–62. It stated:

> So far ... as the municipalities organized under the general law are concerned, there is an explicit limit placed by that law upon the amount of taxes which they may levy. We have held, however, in the case of *Town of Flagstaff v. Gomez,* 29 Ariz. 481, 242 P. 1003, that this limitation refers only to obligations voluntarily incurred by the municipality. It is true that the particular indebtedness for which the town of Flagstaff was required to levy a tax in excess of the statute arose out of a tort, and for that reason was held not to be a voluntary indebtedness, but *we see no logical reason why an indebtedness or liability imposed by a superior authority upon a municipality is not an involuntary one and, therefore, not within the limitation of the taxing power aforesaid in the same manner as an indebtedness incurred as the result of a tort and a judgment rendered thereon.* Were this not the rule, the consequences might be disastrous in the extreme to any of the municipalities falling within this category.... It will not lightly be presumed that the legislature meant to impose a burden upon the cities, which they are not given the power to meet except at the expense of a total cessation of general governmental functions.

*Id.* at 164–65, 65 P.2d at 1162 (emphasis added). *See also Lockwood v. Board of Supervisors of Maricopa County,* 80 Ariz. 311, 314, 297 P.2d 356, 358 (1956) (holding budget limit statutes did not apply to "public charges fixed by law, the incurring of which is beyond the control of the board of supervisors").

*Gomez, Lockwood,* and *Wise* were firmly in place when the electorate considered and adopted Article 9, section 19 of the Arizona Constitution. In *Garcia v. City of South Tucson,* 135 Ariz. 604, 606, 663 P.2d 596, 598 (App.1983), this Court effectively held that the public policy underlying Article 9, section 19 is indistinguishable from that supporting the legislation interpreted in *Gomez* and *Wise.* The *Garcia* court rejected South Tuc-

son's contention that Article 9, section 19 would preclude it from levying additional taxes to satisfy a tort judgment, stating:

> We find no merit in appellants' contention that Art. 2, § 32 and Art. 9, §§ 18 and 19 of the Arizona Constitution, which place limitations on property tax increases, inhibit their ability to levy taxes. These limitations apply only to voluntary indebtedness. *Town of Flagstaff v. Gomez, supra; Lewis v. Widber*, 99 Cal. 412, 33 P. 1128 (1893); *State v. City of Willow Springs*, 183 S.W. 589 (Mo.1916). The non-inclusion of involuntarily imposed obligations in the exceptions does not bar such obligations.

*Id.*

PTOC argues, however, that a judgment ordering a refund of property taxes collected for prior years does not qualify as an obligation that is "involuntarily imposed." This is so, reasons PTOC, because a wrongful assessment of property taxes is not one that is done under duress or without will or the power of choice, and therefore is not an "involuntary" act. PTOC urges:

> [T]he only reason [the County's] obligation exists is because of its knowing, voluntary actions. The County's focus on the involuntary nature of the court judgment entered against it, and the Tax Court's acceptance of this focus, misses the mark. Any judgment may be considered involuntary, whether based on contract, tort or some other legal obligation. Involuntariness must be determined by looking at the acts creating the obligation. These could be the tortious act itself, the act that causes the injury, or in a contract case, entering into an agreement.

This analysis is inconsistent with the controlling Arizona case law. Following *Gomez, Wise* and *Garcia*, we find that an obligation is deemed involuntary not because the act that gave rise to it was committed unintentionally, unconsciously, or accidentally, but rather because the obligation itself was not "voluntarily incurred." *See Garcia*, 135 Ariz. at 606, 663 P.2d at 598; *Wise*, 49 Ariz. at 164–65, 65 P.2d at 1162; *Gomez*, 29 Ariz. at

485–86, 242 P. at 1004. In this case, the obligation to refund taxes was imposed by a superior authority and was clearly an involuntary obligation not within the two percent limitation.

Two of the three out-of-state decisions relied on by PTOC are in full accord with the Arizona requirement that an obligation be incurred involuntarily before it can be deemed outside an applicable budget or taxing limit. *See City of Catlettsburg v. Fabric Fire Hose Co.*, 264 Ky. 594, 95 S.W.2d 285, 287 (1936) (judgment fixing liability for breach of contract to purchase equipment held not outside statutory tax rate limitation); *Lewis v. Widber*, 99 Cal. 412, 33 P. 1128, 1129 (1893) (delinquent statutory salary of public officer was outside requirement that annual municipal expenses not exceed revenues).

PTOC relies on *Perry County v. Kentucky River Coal Corp.*, 268 Ky. 78, 103 S.W.2d 689 (1937). There, the county contended that a judgment against it for breach of an obligation to pay the state for the cost of maintaining children in the Kentucky house of reform was outside its statutory taxing limit because the underlying obligation was imposed by statute and therefore involuntary. *Id.* at 690. The court acknowledged this principle and purported to follow *Catlettsburg. Id.* at 691. However, the court unaccountably held that the county's clearly involuntary statutory obligation was within the taxing limit and that the county could not impose a special tax to pay it. *Id.*

PTOC also argues that the County's obligation to pay property tax refunds should be deemed voluntarily undertaken because the County knew that the affected taxpayers were paying the assessments under protest and "knew its receipts were questionable and subject to refund." PTOC also contends that a judgment awarding a tax refund is analogous to a judgment on a contract claim and should be held within the levy limit. We disagree.

PTOC cites no case law in support of these contentions. In addition, neither argument

makes any intrinsic sense. The knowledge that a taxpayer disputes a tax liability cannot reasonably charge a taxing authority with precognition that the taxpayer will finally prevail in the dispute, perhaps years in the future. Collection of a tax under those circumstances cannot rationally be construed to imply a voluntary undertaking by the taxing authority to repay the amount collected. Moreover, a county's judicially-determined obligation to refund property taxes is founded not on contract, but on taxing statutes and procedural rules governing tax procedure before administrative agencies and in the courts.

Finally, we consider PTOC's contention that if we were to hold that property tax refund judgments are outside the levy limit, we would give taxing authorities who wish to lower their overall property tax rates for cosmetic reasons "an incentive to classify and value properties in an overaggressive manner" and "lessen the incentive a county has to accurately and fairly classify property the first time around." We cannot agree. However, even if it were true, PTOC would still lose. One could also speculate that county officials would clearly foresee the political risk of imposing extra taxes on all owners of taxable property to repay taxes recklessly and wrongly extracted in the past.

These considerations also distinguish *Central Dauphin School District v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981), on which PTOC relies. There, the court found that it would be contrary to public policy for a political subdivision to use public funds to insure against the risk of judgments for unlawfully collected taxes. *Id.* at 96. The holding in *Central Dauphin School District* is neither surprising nor apposite to the facts of this case. Unlike the situation in our hypothetical discussion, irresponsible officials who are protected by insurance would incur little political risk in instituting a policy of overaggressive tax classification and valuation. The taxpayers would, in effect, be continuously refunding unlawful taxes via the taxing authority's regular, inconspicuous insurance premiums rather than in painfully noticeable amounts collected through special tax levies.

The tax court did not err by granting summary judgment to the County. Because of our holding, we need not reach the question whether A.R.S. section 42–178(F) (Supp. 1996) independently authorized the County to exceed its levy limit by the amount of its payment for property tax refunds. We also need not address the County's contention that PTOC's ruling violated Article 9, section 19 of the Arizona Constitution on the theory that it subjected the amount of the property tax refund payments to a "double" two percent levy limit.

A judgment awarding an ad valorem property tax refund constitutes an involuntary obligation, and falls outside the levy limit of Article 9, section 19 of the Arizona Constitution. The judgment of the tax court is affirmed.

TOCI and WEISBERG, JJ., concur.