56 P.3d 65

**NAVAJO COUNTY, a political subdivision of the State of Arizona, Plaintiff–Appellant,**

v.

**PROPERTY TAX OVERSIGHT COMMISSION, Defendant–Appellee.**

No. 1 CA–TX 01–0016.

Court of Appeals of Arizona, Division 1, Department T.

Oct. 24, 2002.

---

Melvin R. Bowers, Jr., Navajo County Attorney By Lance B. Payette, Holbrook, for Appellant.

Janet Napolitano, Arizona Attorney General By Lisa A. Neuville, Assistant Attorney General, Phoenix, for Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 Navajo County appeals from a tax court judgment sustaining a determination of appellee Property Tax Oversight Commission ("PTOC") that Navajo County exceeded its ad valorem property tax levy limit for tax year 2000. The County paid $275,000 to settle lawsuits brought by medical care providers to recover for health care services rendered to indigent Navajo County residents from 1994 through 1999 but did not include the $275,000 in calculating its maximum ad valorem property tax levy. We hold that this expenditure must be included within Navajo County's ad valorem property tax levy limit for the year 2000.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 In 1980, the Arizona electorate adopted Article 9, Section 19 of the Arizona Constitution, which provides in part:

(1) The maximum amount of ad valorem taxes levied by any county, city, town or community college district shall not exceed an amount two per cent greater than the amount levied in the preceding year.

The voters evidently wanted to curb the growth of governmental spending by placing limits on the property taxation powers of local governmental units. *See Mountain States Legal Found. v. Apache County,* 146 Ariz. 479, 480–81, 706 P.2d 1246, 1247–48 (App.1985). The "levy limit" is the annual cap placed on property taxes by this provision. *Salt River Proj. Agric. Improv. and Power Dist. v. Apache County,* 172 Ariz. 337, 338, n. 1, 837 P.2d 139, 140 (1992).

¶ 3 The constitution contains only three exceptions to the levy limit, none of which applies here. Ariz. Const art. 9, § 19(2).[1] Instead, Navajo County argues that Arizona appellate courts have created another exception for involuntary payments resulting from judgments or prejudgment settlements, citing *Maricopa County v. Prop. Tax Oversight Comm'n,* 188 Ariz. 214, 933 P.2d 1289 (App. 1997) (tax refund mandated by successful litigation against the County held not subject to levy limit) and *Garcia v. City of South Tucson,* 135 Ariz. 604, 663 P.2d 596 (App. 1983) (involuntary tort judgment held not subject to levy limit). The County contends that the $275,000 payment to settle the claims for indigent health care is analytically the same as an involuntary tax refund or tort judgment and should therefore be considered outside of the levy limit.

¶ 4 At all times pertinent to this dispute, Arizona counties were required to provide for emergency ambulance services and hospital treatment for their indigent residents in their annual budget and tax levy. *See* Ariz. Rev.Stat. ("A.R.S.") § 11–292 (1994–98); *see also* A.R.S. §§ 11–291 to 11–291.01 (1994–99), and § 11–297.01, *repealed by* 2001 Ariz. Sess. Laws. ch. 344, § 12, eff. Oct. 1, 2001. From 1994 through 1999, certain private hospitals, medical care providers, and ambulance companies brought nineteen lawsuits against Navajo County and other counties seeking payment for emergency medical services provided to persons alleged to be indigent residents of the defendant counties. The amounts claimed against Navajo County totaled over $2.5 million. In late 1999, Na-

vajo County settled with the plaintiffs for a total of $275,000 in return for dismissal of all the claims against it.

¶ 5 One of the functions of the PTOC is to determine whether political subdivisions such as counties have calculated their primary property tax levies in compliance with our constitutional levy limit. A.R.S. § 42–17003(A)(2), (5) and (B) (Supp.2001). For tax year 2000, Navajo County treated the $275,000 settlement expenditure as payment of an obligation that was involuntarily incurred and therefore not subject to the County's levy limit for that year. The PTOC notified the County of its disagreement with that action.

¶ 6 After a hearing requested by the County, the PTOC issued a written decision finding that the 1999 settlement payment was involuntary, but not unpredictable, and therefore the PTOC did not permit the County to collect an additional $275,000 through primary property taxes exceeding the tax year 2000 levy limit. The PTOC decision reasoned:

> If predictable, the County in performing its ministerial duties must anticipate the involuntary event in its budget process. This is particularly true in this instance where the matter was being litigated over a long period of time. Counties have numerous obligations presented to them by the Legislature that are not funded by the state in any way. The focus is whether or not the judgment falls under one of those obligations. Health care for the indigent is one of these obligations.
>
> It can be assumed that if these amounts were clearly established at the outset as being to provide health care to the indigent that the County would have paid these amounts as being within the County's lawful obligation without the need for a lawsuit against the County. Even though being paid now as a result of a settlement ... the payments still constitute health care for the indigent.
>
> Similar disputes of this nature can and probably will happen year after year. In

---

1.  Under Article 9, Section 19(5) of the Arizona Constitution, Navajo County voters also have the right to override the levy limit, but no such

override has occurred for the $275,000 payment at issue here.

fact, depending on how strict the county is in asking for substantiation, it could precipitate disputes that would require extensive investigation and settlement in subsequent years. It seems only reasonable and prudent to expect the County in its ministerial function to anticipate claims of this nature.

¶ 7 As permitted by A.R.S. §§ 12–901 (Supp.2001) to 12–914 (1992), 41–1092.08 (Supp.2001), and 42–17004(E)(1) (Supp.2001), the County filed a complaint for judicial review of the PTOC's decision in the tax court. After briefing and argument, the tax court ruled for the PTOC. The court agreed with the PTOC's reasoning, concluding:

> The County's obligation for indigent healthcare is very different from the tort claim judgment or settlement, or a court-ordered tax refund that was not a planned or foreseen expense. While it is the State legislature that continues to compel the counties to provide indigent healthcare by way of an essentially unfunded mandate, and not something the counties volunteered to do on their own, it is a responsibility that absent catastrophe or unusual circumstances counties can predict with a reasonable degree of accuracy. The limited exemptions to the tax levy limitations carved out by our courts in *Town of Flagstaff v. Gomez,* 29 Ariz. 481, 242 P. 1003 (1926); *Wise v. First National Bank of Nogales,* 49 Ariz. 146, 65 P.2d 1154 (1937); *Garcia v. City of South Tucson,* 135 Ariz. 604, 663 P.2d 596 (App.1983); and *Maricopa County v. Property Tax Oversight Commission,* have no application to the case at bar.

Navajo County appealed. We have jurisdiction pursuant to A.R.S. §§ 12–913 (1992) and 12–2101(B) (1994).

## STANDARD OF REVIEW

¶ 8 "When an administrative decision is appealed, both the superior court and this court decide whether the administrative agency acted illegally, arbitrarily, or capriciously, or whether it abused its discretion."

*City of Sierra Vista v. Director, Ariz. Dep't of Envtl. Quality,* 195 Ariz. 377, 380, ¶ 7, 988 P.2d 162, 165 (App.1999). We deferentially review factual determinations of the administrative agency, *Nutek Info. Sys. v. Ariz. Corp. Comm'n,* 194 Ariz. 104, 107–08, ¶ 15, 977 P.2d 826, 829–30 (App.1998), but independently review the administrative agency's interpretation of the law. *Romo v. Kirschner,* 181 Ariz. 239, 240, 889 P.2d 32, 33 (App.1995).

## ANALYSIS

¶ 9 The County contends that both the PTOC and the tax court misinterpreted this court's opinion in *Maricopa County v. Property Tax Oversight Comm'n* and that proper application of *Maricopa County* to this dispute would result in a reversal in favor of Navajo County. The County argues that, under *Maricopa County,* the determinative inquiry is whether the obligation was incurred "voluntarily." It urges that as long as the final obligation imposed on the County arose from litigation of a claim against the County, the obligation was "involuntary" and *ipso facto* outside the levy limitation. The County faults the tax court for focusing on the County's underlying statutory obligation to pay for indigent health care rather than on the fact that the County's obligation to pay the $275,000 was involuntarily imposed through litigation.[2]

¶ 10 We believe Navajo County's position is based on a misconception of the rationale and holding in *Maricopa County.* The County's emphasis on the fact that its payment obligation was the product of litigation relies on a particular portion of the *Maricopa County* opinion. In *Maricopa County,* the PTOC contended that the question whether an obligation is "voluntary" depends exclusively on the nature of the taxing authority's particular acts that gave rise to the obligation, not on the means by which the obligation was ultimately imposed. 188 Ariz. at 218, 933 P.2d at 1293. The PTOC urged: "Involuntariness must be determined by looking at the acts creating the obligation.

---

2. The County nevertheless acknowledges that judgments or litigation settlements arising from a taxing entity's breach of contract are subject to the levy limit, because the entity voluntarily assumes the underlying obligation by entering into the contract.

These could be the tortious act itself, the act that causes the injury, or in a contract case, entering into an agreement." *Id.*

¶ 11 The court in *Maricopa County* responded:

This analysis is inconsistent with the controlling Arizona case law. Following *Gomez, Wise,* and *Garcia,* we find that an obligation is deemed involuntary not because the act that gave rise to it was committed unintentionally, unconsciously, or accidentally, but rather because the obligation itself was not "voluntarily incurred." In this case, the obligation to refund taxes was imposed by a superior authority and was clearly an involuntary obligation not within the two percent limitation.

*Id.* (citations omitted).

■ ¶ 12 This passage evidently led Navajo County to conclude that any obligation imposed "by a superior authority" is necessarily "involuntary" and outside the levy limitation. We conclude, however, that the core determination of *Maricopa County* was that Article 9, Section 19 of the Arizona Constitution was intended "to restrain only planned or clearly foreseen expenditures of the type over which the taxing authority can exercise a significant degree of control through its budgeting process." *Id.* at 216, 933 P.2d at 1291.

¶ 13 The result in *Maricopa County* is distinguishable because the tax refund obligation in that case was not voluntarily assumed but rather imposed on Maricopa County as a result of litigation, and because the obligation was not one that Maricopa County could have foreseen or for which it could have planned under the particular circumstances of the litigation and its legislative aftermath. *See generally Hayden Partners Ltd. P'ship v. Maricopa County,* 166 Ariz. 121, 800 P.2d 987 (App.1990) (ordering refunds based on misclassification, as "undetermined usage" rather than "residential use" property, of vacant and partially completed properties intended for residential use); *S & R Properties v. Maricopa County,* 178 Ariz. 491, 500, 875 P.2d 150, 159 (App.1993) (invalidating amendment of A.R.S. § 11–506 retroactive to 1986 that would have prevented

recovery of retroactive refunds pursuant to *Hayden Partners* ).

■ ¶ 14 The tax court correctly read *Maricopa County* to hold that a taxing entity may not collect property taxes beyond its levy limit unless the obligation in question was both involuntarily incurred and neither planned nor clearly foreseen. We do not believe that *Maricopa County* should be read to support any broader exception to Article 9, Section 19(1) of the Arizona Constitution.

■ ¶ 15 Contrary to Navajo County's contention, the PTOC's and the tax court's reliance on the County's statutory responsibility for indigent medical care was properly within the scope of the analysis adopted in *Maricopa County* because it bore on the extent to which the County's $275,000 settlement obligation was foreseeable. We agree with the tax court's analysis on that point:

There are many services that the counties are required to provide for their residents that are mandated by either the Arizona Constitution or State law which the respective boards of supervisors do not voluntarily undertake, but these are not the type of expenses which are exempt from the tax levy limitations imposed upon the counties under the Arizona Constitution.

The Court would note that the 19 lawsuits which form the subject matter of the global, $275,000.00 indigent healthcare settlement are for the years 1994 through 1999. The County has presented no competent evidence to the PTOC that there were any catastrophic or unusual healthcare events during this five year timeframe or that there was a substantial increase in the number of indigent residents requiring healthcare within the County during this timeframe that could not have been adequately addressed through proper planning and budgeting. The County had options available such as building a County hospital, contracting with healthcare providers for indigent healthcare at reduced rates, or purchasing insurance to cover the expenses of anticipated indigent healthcare. The County had available to it historical indigent healthcare cost data from previous years and based upon population growth, could have projected its expected

costs for indigent healthcare during the years 1994 through 1999. More importantly, had the County incurred exceptionally high or extraordinary healthcare costs in 1994, it could have deferred some of these payments until 1995 and budgeted additional revenues to cover the already incurred expenses, together with projected indigent healthcare expenses for the 1995 fiscal year.

The County in wishing to exceed the tax levy limits must demonstrate that indigent healthcare costs for the years in question were unpredictable, extraordinary and . . . could not have been planned for or adequately foreseen.

¶ 16 Our conclusion that the $275,000 amount in dispute is subject to Navajo County's levy limit is supported—perhaps compelled—by the plain language and intent of Article 9, Section 19 of our constitution. As we pointed out in ¶ 3, the $275,000 payment does not fall into one of the listed exceptions to the levy limit in Article 9, Section 19(2) nor have the voters of Navajo County authorized the County to exceed the levy limit. Neither party in this appeal challenges the correctness of the *Garcia* and *Maricopa County* decisions finding exceptions to the levy limit beyond those contained in the constitution and we do not address whether the will of the people as expressed in our constitution permits these additional exceptions. We conclude that this dispute is properly resolved by distinguishing the issue presented here from the issues in *Maricopa County* and *Garcia* and by applying the constitutional levy limit.

## CONCLUSION

¶ 17 The PTOC correctly decided that the $275,000 settlement payment must be included in Navajo County's property tax levy limit for the year 2000. The judgment of the tax court upholding the PTOC's decision is affirmed.

CONCURRING: JEFFERSON L. LANKFORD, Judge and JAMES B. SULT, Judge.