192 P.3d 409 (2008)
ARIZONA MINORITY COALITION FOR FAIR REDISTRICTING, an unincorporated association; Ramon Valadez; State Representative Peter Rios; Carlos Avelar; Maricopa County Supervisor, Mary Rose Garrido Wilcox; Esther Lumm; Virginia Rivera; Los Abogados, an Arizona Corporation, Plaintiffs/Appellees,
v.
ARIZONA INDEPENDENT REDISTRICTING COMMISSION; Steven W. Lynn, in his official capacity as Chairman and a Commissioner thereof; Andrea Minkoff; in her official capacity as Vice Chairman and a Commissioner thereof; Daniel R. Elder, in his official capacity as a Commissioner thereof; Joshua M. Hall, in his official capacity as a Commissioner thereof; James R. Huntwork, in his official capacity as a Commissioner thereof, Defendants/Appellants.
No. 1 CA-CV 07-0301.
Court of Appeals of Arizona, Division 1, Department A.
April 10, 2008.
Review Granted September 23, 2008.
*410 Perkins Coie Brown & Bain P.A. by Paul F. Eckstein, Charles A. Blanchard, Jessica L. Everett-Garcia, Rhonda L. Barnes, and Lewis and Roca, L.L.P. by Richard A. Halloran, Lawrence A. Kasten, Kimberly A. Demarchi, Phoenix, Attorneys for Plaintiffs/Appellees.
Gammage & Burnham, P.L.C. by Lisa T. Hauser Cameron C. Artigue Phoenix, and Haralson Miller Pitt Feldman & McAnally, P.L.C. by Jose de Jesus Rivera, Peter T. Limperis, Phoenix, Attorneys for Defendants/Appellants.

OPINION
PORTLEY, Judge.
¶1 Arizona Independent Redistricting Commission ("Commission") and Commissioners Steven Lynn, Andrea Minkoff, Daniel Elder, Joshua Hall, and James Huntwork (collectively, "Commissioners") appeal the trial court's Findings of Fact and Conclusions of Law, and Order. For the following reasons, we reverse in part and vacate in part.

FACTUAL AND PROCEDURAL BACKGROUND
¶2 This is a continuation of our review of the challenges to the legislative districts established by the Commission. See Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n (Redistricting I), 211 Ariz. 337, 341, ¶ 1, 121 P.3d 843, 847 (App.2005).
¶3 The Commission[1] established final congressional and legislative plans for the 2002 elections and submitted the plans to the United States Department of Justice ("DOJ") for preclearance in November 2001. Id. at 342, ¶ 6, 121 P.3d at 848.
¶4 The Arizona Minority Coalition for Fair Redistricting ("Coalition") sued the Commission in March 2002 and challenged the constitutionality of the legislative plan.[2]Id. at 342-43, ¶ 7, 121 P.3d at 848-49. In January 2004 the superior court, after a bench trial, found that the final legislative plan failed to favor competitive districts and enjoined the Commission from using the plan. Id. at 343, ¶ 10, 121 P.3d at 849. The court directed the Commission to formulate various definitions and standards, and retained jurisdiction to implement its orders. See id. The court approved a revised legislative plan in April 2004. Id.
¶5 The Commission appealed the court's January 2004 ruling, and we found the court erred by: (1) applying the strict scrutiny standard to evaluate the equal protection claims, (2) requiring the Commission to adopt definitions for terms before utilizing them, *411 (3) requiring the Commissioners to ignore their personal knowledge and experience, (4) failing to treat competitiveness as a subordinate goal, and (5) finding the Commission had violated Article 4, Part 2, Section 1(15) of the Arizona Constitution. Id. at 364-65, ¶¶ 110-14, 121 P.3d at 870-71. We reversed the judgment and instructed the trial court to apply the rational basis standard to resolve the equal protection challenges. Id. at 366, ¶ 120, 121 P.3d at 872. We further instructed the trial court "to decide whether the Commission violated the Equal Protection Clause and/or Article 4, Part 2, Sections 1(14) and (15) of the Arizona Constitution, after considering our interpretation of those provisions." Id. In light of our decision, we also vacated the court's April 2004 judgment approving a new legislative redistricting plan. Id. at ¶ 122.
¶6 On remand, the parties agreed that a new trial was not necessary. They stipulated to the admission of Dr. Lisa Handley's affidavit and to omitting two e-mail communications. The Coalition, moreover, advised the court that it was no longer pursuing its equal protection challenges. The parties then argued their respective positions.
¶7 The court, after review of the amended record, again found the Commission's plan was "in violation of Article IV, part 2, sections 1(14)-(16) of the Arizona Constitution." The court also enjoined the State from using the Commission's "Final 2002 Adopted Legislative Plan."
¶8 The Commission appealed,[3] and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003) and 12-2101(B) (2003).

DISCUSSION
¶9 The Commission argues that the trial court failed to follow our instructions in Redistricting I, improperly applied the rational basis standard, and made findings that were not supported by the record. Because the Coalition abandoned its equal protection challenges, we need not analyze the court's ruling under the rational basis standard. Instead, we need only review whether the Commission, as a constitutional administrative agency, had substantial facts to support its findings.

I. Standard of Review
¶10 When reviewing the decisions of a commission or other administrative agency, the trial court must determine whether there was substantial evidence to support the decision. See E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n, 206 Ariz. 399, 409, ¶ 35, 79 P.3d 86, 96 (App.2003) (citation omitted). We determine whether the trial court applied the appropriate standard of review. Substantial evidence is evidence that would permit reasonable persons to reach the administrative body's decision. Gravel Res. of Ariz. v. Hills, 217 Ariz. 33, 38, ¶ 14, 170 P.3d 282, 287 (App.2007). "[B]oth the superior court and this court [must] decide whether the administrative agency acted illegally, arbitrarily, or capriciously, or whether it abused its discretion." Navajo County v. Prop. Tax Oversight Comm'n, 203 Ariz. 491, 494, ¶ 8, 56 P.3d 65, 68 (App.2002); see Johnson v. Pointe Cmty. Ass'n, 205 Ariz. 485, 488, ¶ 17, 73 P.3d 616, 619 (App.2003) (citing A.R.S. § 12-910(E) (2003)). The trial court is, therefore, obligated to defer to the Commission's decision if it is supported by the record. See E. Vanguard Forex, 206 Ariz. at 409, ¶ 35, 79 P.3d at 96.

II. Commission's Decision
¶11 The Commission argues that the trial court's findings are not supported by the record and are, therefore, clearly erroneous. Specifically, the Commission challenges the finding that it violated Section 1(14) by failing to properly consider competitiveness.
¶12 In Redistricting I, we noted that the court's role is to measure the redistricting *412 plan against the constitutional standards.[4] 211 Ariz. at 344, ¶ 16, 121 P.3d at 850. "The choice among alternative plans, each consistent with constitutional requirements, is for the Commission and not the Court." Id.
¶13 The trial court, on remand, had to determine if the Commission had properly considered competitiveness. The court found that the Commission acted arbitrarily and capriciously in failing to favor the creation of competitive districts because the Commission had failed to consider relevant facts in making its decision. The issue is not, however, whether the Commission failed to create competitive districts. Instead, the issue is whether there is evidence that the Commission considered competitiveness before it finalized its legislative district plans.
¶14 The Coalition, in its Proposed Findings of Fact and Conclusions of Law, outlined the Commission's consideration of competitiveness. The Commission used three objective methods for measuring competitiveness: Judge It,[5] Arizona Quick and Dirty ("AQD"),[6] and voter registration records. The Commission hired a competitiveness expert, Dr. Michael McDonald, to analyze and advise the Commission as to competitiveness. Finally, the Commission considered multiple maps that would have increased the competitiveness of Arizona's legislative districts. After its review, the Commission did not adopt any of the maps that would have increased competitiveness. Instead, the Commission decided that each of the alternative maps that increased competitiveness caused significant detriments to the other constitutional requirements.
¶15 Although the Coalition recognizes that the Commission considered competitiveness, it argues the Commission failed, on remand, to establish competitive districts. Specifically, the Coalition claims the Commission: (1) failed to consider competitiveness until phase four, (2) did not fully utilize its resources, and (3) improperly used subjective measures in considering competitiveness.
¶16 In creating legislative districts, the Commission must follow the constitutional plan. See Ariz. Const. art. 4, pt. 2, § 1(14)-(17). In our previous opinion we described the implementation of the constitutional plan as having four phases. Redistricting I, 211 Ariz. at 352, ¶ 53, 121 P.3d at 858. During phase one, we stated that the Commission "must create `districts of equal population in a grid-like pattern across the state.'" Id. (quoting Ariz. Const. art. 4, pt. 2, § 1(14)). In phase two, the Commission has to make adjustments to the grid map to accommodate the six goals. Id. at 353, ¶ 54, 121 P.3d at 859 (citing Ariz. Const. art. 4, pt. 2, § 1(14)(A)-(F)). Phase three requires the Commission to advertise the draft maps, and take public and legislative comment for thirty days. Id. at ¶ 55 (citing Ariz. Const. art. 4, pt. 2, § 1(16)). The fourth and final phase requires "the Commission [to] establish[] final district boundaries and certif[y] the new districts to the secretary of state." Id. (citing Ariz. Const. art. 4, pt. 2, § 1(16)-(17)).
*413 ¶17 Here, the Commission followed the constitutional plan. After creating the phase one grid-like pattern, the Commission made adjustments to the phase-one grid to accommodate the six listed goals. See Ariz. Const. art. 4, pt. 2, § 1(14). Specifically, the Commission is required to favor competitive districts "to the extent practicable" if those districts "create no significant detriment to the other goals." See id. While phase two requires adjustments in accordance with these goals, there is nothing in the constitutional provision that suggests that it is improper to first consider competitiveness in other later phases. For example, the Commission might decide to evaluate competitiveness along with other factors after having received public input on the proposed districts. Proceeding in such a way does not produce a per se constitutional flaw. Moreover, we consider the totality of the circumstances in reviewing the Commission's decision.
¶18 Next, the Coalition notes that Dr. McDonald attended no Commission meetings, was not asked to assist in drawing legislative plans, and was asked to remove recommendations from his report. Although the Commission may not have used Dr. McDonald's expertise in a conventional manner, the Commission's use of Dr. McDonald's reports nonetheless demonstrates its efforts to consider competitiveness. See supra ¶ 14.
¶19 Finally, the Coalition lists several examples in which the Commissioners used their personal knowledge and experience in denying alternative legislative plans. The Coalition again misunderstands the constitutional requirements under Section 1(14). The Commission need only favor competitiveness when to do so is "practicable" and causes "no significant detriment to the other goals." Ariz. Const. art. 4, pt. 2, § 1(14). This provision does not enumerate the manner in which competitiveness should be considered nor does it require objective testing to show significant detriment. We previously noted that no constitutional provision "requires Commissioners to ignore [personal] knowledge or experience." Redistricting I, 211 Ariz. at 360, ¶ 90, 121 P.3d at 866. While the Coalition's allegations may be some evidence of a perfunctory consideration of competitiveness, the allegations, in light of the other evidence of competitiveness, fail to establish a violation of Section 1(14).
¶20 The Commission considered competitiveness and made a finding that a more competitive plan would cause a significant detriment to the other five constitutional goals. We conclude that the Commission's findings were supported by substantial evidence. See E. Vanguard Forex, 206 Ariz. at 409, ¶ 35, 79 P.3d at 96.

III. Sections 1(15) and 1(16)
¶21 The Commission further argued that the trial court improperly found the 2002 Legislative Plan violated Article 4, Part 2, Sections 1(15) and 1(16) ("Sections 1(15) and 1(16)"). We agree.
¶22 The Coalition abandoned its claim under Section 1(15). As a result, the court did not need to examine Section 1(15) on remand. The court, however, found that the 2002 Legislative Plan violated the provision. Making a determination of a factor not at issue on remand is error.
¶23 Additionally, in Redistricting I, we specifically instructed the court to revisit Sections 1(14) and 1(15) after considering our interpretation of those provisions. 211 Ariz. at 366, ¶ 120, 121 P.3d at 872. Section 1(16) was not included in our mandate. In considering additional constitutional violations on remand, the trial court exceeded its authority.
¶24 Accordingly, we vacate the trial court's findings as to Sections 1(15) and 1(16).

IV. Attorneys' Fees
¶25 The Coalition requests attorneys' fees on appeal pursuant to the mandamus statutes and the private attorney general doctrine. The mandamus statutes provide attorneys' fees and costs when a party "prevails by an adjudication on the merits in a civil action brought by the party against the state, any political subdivision of this state or an intervenor to compel a state officer or any officer of any political subdivision of this *414 state to perform an act imposed by law as a duty on the officer." A.R.S. § 12-2030 (2003). Because the Coalition was not the prevailing party, we deny its request for attorneys' fees.

CONCLUSION
¶26 For the foregoing reasons, we reverse the trial court's finding that the Commission violated Section 1(14). We vacate the trial court's findings of Sections 1(15) and 1(16) violations.
CONCURRING: PHILIP HALL, Presiding Judge and G. MURRAY SNOW, Judge.
NOTES
[1] The Commission was established in November 2000 when Arizona voters approved Proposition 106, amending the Arizona Constitution. Redistricting I, 211 Ariz. at 341, ¶ 1, 121 P.3d at 847. The amendment placed the power to redraw the congressional and legislative district lines with the Commission. Id.
[2] Eight days later, a separate action was filed challenging the congressional plan. Redistricting I, 211 Ariz. at 343, ¶ 8, 121 P.3d at 849. The congressional plan is not at issue in this appeal.
[3] The Commission's Notice of Appeal also challenged the final judgment entered on March 20, 2007, which denies the Commission's Motion to Amend, Motion for New Trial and awards the plaintiffs their attorneys' fees, taxable costs and post-judgment interest. Because the Commission has not argued the issues in their opening brief, we do not address them. See James v. State, 215 Ariz. 182, 191, ¶ 34, 158 P.3d 905, 914 (App.2007) (finding that when issues were not raised in the opening brief, they were deemed waived).
[4] The constitutionally mandated goals are:

A. Districts shall comply with the United States [C]onstitution and the [U]nited [S]tates [V]oting [R]ights [A]ct;
B. Congressional districts shall have equal population to the extent practicable, and state legislative districts shall have equal population to the extent practicable;
C. Districts shall be geographically contiguous to the extent practicable; District boundaries shall respect interest to the extent practicable;
D. District boundaries shall respect communities of interest to the extent practicable;
E. To the extent practicable, district lines shall use visible geographic features, city, town and county boundaries, and undivided census tracts;
F. To the extent practicable, competitive districts should be favored where to do so would create no significant detriment to the other goals.
Ariz. Const. art. 4, pt. 2, § 1(14).
[5] Judge It uses an advanced statistical analysis based upon the results from previous elections to enable the user to predict the potential outcome of an election. The user can predict the percentage of votes a candidate from one of the two major parties will receive. A predicted differential of seven percent or less is considered competitive.
[6] The AQD is comprised of data extrapolated from the election results of three Corporation Commission races from the 1998 and 2000 general elections. Applying this measure, a district is competitive when the Democratic AQD and the Republican AQD scores are within seven percentage points.